# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

A white 2019 Jeep Grand Cherokee Laredo SUV, four-door, bearing an Illinois registration plate of FP91905, VIN of 1C4RJFAG5KC793381, currently located at 3811 West Lincoln Avenue, Milwaukee, Wisconsin

Case No. 20-MJ-88

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Please see Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

Please see Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1) and 846

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jonathon Newport, FBI TFO
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 2/27/2020

_____
*Judge's signature*

City and State: Milwaukee, WI — William E. Duffin, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Jonathon Newport, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1. I am a federally deputized Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI). I have been a FBI TFO with the Southeastern Wisconsin Regional Gang Task Force since October of 2015. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

2. As a federal task force officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have

also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

3. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (distribution and

2

possession with the intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with the intent to distribute controlled substances) have been committed by Lamar JOHNSON, aka "Fresh" (dob: 11/07/1987). There is also probable cause to believe that the location described in Attachment A will constitute evidence of these criminal offenses, as described in Attachment B.

6. In February of 2019, case agents initiated an investigation into a group of known and unknown drug traffickers operating in the Milwaukee area, known as the Buffum Meinecke Boys ("BMB"), including Ramone LOCKE, aka "Mone", Amir LOCKE, aka "Big Mir", Joey VAZQUEZ, aka "Joey", Louis BATES, aka "Little Louis", Michael SMITH, aka "M&M", Garrell HUGHES, aka "Rello", Jesus PUENTES, aka "JP", Coury AGEE, aka "Lil C", Lamar JOHNSON, aka "Fresh", Luis Lorenzo, aka "Pito" and others. As part of the investigation, case agents have interviewed several confidential sources, conducted physical and electronic surveillance, utilized pen registers, reviewed historical phone toll records, reviewed subpoenaed records of documents, and have conducted controlled purchases of cocaine, crack cocaine, and heroin. As a result of the intelligence provided by the confidential sources and the controlled purchases, along with information obtained from other law enforcement techniques, case agents have identified various members of the BMB and identified several sources of supply.

7. In September of 2019, case agents interviewed a confidential source (CS #3) regarding members of the BMB. CS #3 stated that Ramone LOCKE supplies members of BMB with cocaine to distribute. CS #3 stated LOCKE distributes the cocaine to Jesus

3

PUENTES, and that PUENTES then manufactures the cocaine into crack cocaine and further distributes it to other members of BMB, including "Rello" (Garrell HUGHES) and "Fresh" (Lamar JOHNSON) for further distribution. CS #3 stated that PUENTES, HUGHES, and JOHNSON utilize two cellular phones for drug distribution and work in shifts managing the same "dope phones." CS #3 stated those cellular phone numbers are (414) 519-1236 and (414) 519-1228.

8. CS #3 stated that JOHNSON's shift to distribute cocaine is 3:00 a.m. to 10:00 a.m., PUENTES' shift is 10:00 p.m. to 3:00 a.m., and HUGHES' shift is from 10:00 a.m. to 10:00 p.m. CS #3 further stated that PUENTES, HUGHES, and JOHNSON all tell their drug customers that their nickname is "Butter" in an effort to evade law enforcement. CS #3 stated that PUENTES provides HUGHES and JOHNSON with approximately 4 ½ to 5 ounces of crack cocaine to distribute daily and that HUGHES and JOHNSON keep the cocaine inside of multiple rental vehicles and commonly only keep one (1) ounce on their person at one time. CS #3 stated that once they run out of an ounce, they will obtain more cocaine from one of the other rental vehicles that are parked on the east side of Milwaukee. CS #3 stated that PUENTES, HUGHES, and JOHNSON commonly distribute nine (9) ounces of cocaine in one day. CS #3 stated that PUENTES, HUGHES and JOHNSON purchase two to three (2-3) kilograms of cocaine a week from LOCKE for $28,000 to $30,000.

9. For several reasons, case agents believe CS #3 to be credible and reliable. First, CS #3 has been providing continuous information since September of 2019. Second,

the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was not utilized, and substantial portions of CS #3's information has been corroborated through independent investigation, including surveillance and information from other sources. CS #3 is cooperating for monetary compensation and has prior felony convictions for armed robbery, heroin trafficking and marijuana trafficking. CS #3 is currently on state supervised release. For these reasons, case agents believe CS #3 to be reliable.

10.  Throughout the course of the investigation of BMB, case agents have made several controlled buys of cocaine from members of BMB. Based on my training and experience, I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drugs is then field tested by the case agents for the presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. All of the calls to the target by the informants are

consensually recorded calls under the direction and control of case agents and made in the presence of case agents. Additionally, case agents observe the informants dial the target's number on each occasion and the contact is verified through telephone records.

11. On November 12, 2019, CS #3 contacted JOHNSON at 262.666.1673 and requested heroin. JOHNSON agreed, and set a predetermined meeting location near North Buffum Street and East Center Street in Milwaukee. At that location, CS #3 approached a Honda Fit bearing Wisconsin registration 244-ZTR, which has been utilized by multiple other members of the BMB. Inside were Dennis KING and a third party. KING and JOHNSON exchanged the controlled buy money for the requested heroin, which ultimately weighed 40.52 grams.

12. JOHNSON was indicted on February 18, 2020, for federal controlled substance offenses, in Case No. 20 CR 041.

13. On February 25, 2020, state, local and federal officers executed a joint "takedown" of the BMB and related defendants, attempting to simultaneously arrest the charged defendants and search associated locations.

14. That same morning, case agents conducted a check for JOHNSON in the area of North Martin Luther King Drive and West North Avenue, Milwaukee, Wisconsin, where they identified JOHNSON. When they attempted to arrest JOHNSON, JOHNSON attempted to flee from law enforcement, crashed into the curb, and was ultimately taken into custody. JOHNSON's vehicle was towed to the City of Milwaukee's Tow Lot, located at 3811 West Lincoln Avenue, Milwaukee, Wisconsin, part of a secure Milwaukee Police

Department building. At that time, the vehicle was identified as a white 2019 Jeep Grand Cherokee Laredo SUV, four-door, bearing an Illinois registration plate of FP91905, VIN of 1C4RJFAG5KC793381, which is registered to Hertz Vehicles LLC, at 2170 Mannheim Rd., Des Plaines, IL 60018.

15. Your affiant states that in the course of arresting JOHNSON and taking him from his vehicle, officers observed a cellular phone (on the driver's seat) and a clear plastic bag that contained suspected marijuana (in the driver's side door handle).

16. Based on my training and experience, drug dealers will frequently use both vehicles and cellular telephones in the course of distributing narcotics. I also know, based on my training and experience, that drug dealers in possession of contraband will sometimes go to great lengths to avoid arrest, in a manner similar to JOHNSON's attempt to flee on 2/25/2020.

ATTACHMENT A
PLACE TO BE SEARCHED

A white 2019 Jeep Grand Cherokee Laredo SUV, four-door, bearing an Illinois registration plate of FP91905, VIN of 1C4RJFAG5KC793381, which is registered to Hertz Vehicles LLC, at 2170 Mannheim Rd., Des Plaines, IL 60018, currently located at 3811 West Lincoln Avenue, Milwaukee, Wisconsin.

# ATTACHMENT B
# ITEM TO BE SEIZED

All records and materials relating to violations of 21 U.S.C. §§ 841(a)(1) and 846, including but not limited to:

1. Heroin, cocaine, and any other controlled substance, packaging materials and materials used to prepare heroin and other controlled substances for distribution, controlled substances paraphernalia, and other contraband related to drug trafficking and distribution;

2. Proceeds of drug trafficking activities, including United States Currency, financial instruments, jewelry, documents and deeds reflecting the purchase or lease of real estate, vehicles, jewelry or other items obtained with the proceeds from organized criminal and drug trafficking activities;

3. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records and other documents noting the prices, quantity, and/or times when controlled substances were obtained transferred or sold distributed, and/or concealed;

4. Cellular telephones and all electronic storage areas on the device including text messages, contact lists, digital video recordings or other areas that may contain evidence of drug trafficking or use.

As used above, the term "records" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).